RECEIVED
IN ALEXANDRIA, LA
SEP 2 0 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DAWN R. FERGUSON | CIVIL ACTION NO. 09-cv-730 |
| VERSUS | JUDGE DEE D. DRELL |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Dawn R. Ferguson ("Ferguson") filed an application for Disability Insurance Benefits ("DIB") on or about February 9, 2007 (R. 83-87). The claim was initially denied on March 7, 2007 and Ferguson timely filed a request for hearing before an Administrative Law Judge ("ALJ") (R. 58-59, 64-67). The ALJ held a hearing on June 18, 2008 and issued an unfavorable decision on December 23, 2008 (R. 18-49, 8-17). Ferguson sought review by the Appeals Council but review was denied on March 21, 2009 (R. 1-7). Thus the decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Ferguson filed the instant action seeking judicial review of the Commissioner's decision.

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a

plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423(d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Summary of Pertinent Facts

Ferguson, her attorney and Vocational Expert ("VE"), Richard Galloway, attended the hearing on June 18, 2008 (R. 18). At the time of the hearing, Ferguson was 44 years old and lived with her husband and children in Provencal, Louisiana (R. 22-23,45). She completed the ninth grade as well as a course in cosmetology (R. 23,42).

Ferguson last worked in December of 2006 (R. 25). She held a position at Bellwood Water System for six months reading water meters; however, she had to quit this job because it involved stooping which caused her pain (R. 25). Other work she performed included that of a paper carrier from 1994 through June of 2005; reading water meters for Lincoln Builders for five months in 2006; and working as a beautician in 1997 and 1998 (R. 25-26). Ferguson has not worked since December 31, 2006 (R. 27).

Ferguson complained of tendonitis in her arm, trouble breathing when she walked long distances, anemia and pain in her

2

legs (R. 27-28, 29, 32). Ferguson stated that a doctor at Huey P. Long Medical Center, who she could not name, restricted her lifting to no more than five pounds due to the tendonitis (R. 28). She further advised she was diagnosed with anemia but she could not take the pills due to side effects (R. 29-30). She complained of pain in her leg which she fractured in many places during an automobile accident in 1998 (R. 32). She rated the pain at a level 7 out of 10 and stated it prevented her from working, mopping, sweeping, sleeping well, walking long distances and sitting long periods. However, she admitted she "deals with the pain" and took Tylenol only on occasion (R. 32, 34). Ferguson further admitted that she never told her doctors about her breathing problems (R. 29, 30-31).

The VE testified that a 43 year old with a ninth grade education and cosmetology certification and no exertional limitations who was restricted from pushing and pulling with the right upper extremity on occasion and could never climb ladders, ropes or scaffolds, could perform the obligations of a newspaper carrier, car rental deliverer and messenger/deliverer (R. 45-46). However, if that same person was only able to lift and carry ten pounds occasionally and less than ten pounds frequently, could stand or walk only two hours in an eight hour day and sit six hours in an eight hour day and could only occasionally push and/or pull with the upper right extremity and could not climb ladders, ropes

3

or scaffolds, the job of cashier would be suitable (R.46-47).

There are only two medical records in this case: treatment notes from an emergency room visit at Huey P. Long Medical Center ("Huey P. Long") on January 29, 2007 for elbow pain (R. 137-141) and treatment records from Louisiana State University Medical Center, Shreveport ("LSUS") in September of 1998 for injuries sustained in a very serious automobile accident (R. 144-262). The treatment notes from Huey P. Long reveal Ferguson was seen in the emergency room after complaining of elbow pain. She was diagnosed with lateral epicondylitis of the right elbow region and was prescribed Motrin and Medrol Dosepack tablets (R. 141). She was discharged and sent home in stable condition (R. 142). Medical Records from LSUS reveal Ferguson sustained multiple serious injuries in an automobile accident. Among these were fractures in her right lower extremity, including her knee, femur and ankle and Ferguson underwent surgery to correct the same (R. 148-151, 217-219, 223-225, 231-232).

In August of 2008, after the hearing before the ALJ, John P. Sandifer, M.D., evaluated Ferguson at the request of Disability Determination Services (R. 263-271). Dr. Sandifer noted Ferguson suffered from:

        1. Tendonitis right shoulder with mild to moderate Impingement Syndrome.

        2. Tendonitis right elbow

        3. *Severe* Traumatic Arthritis right ankle

4

    4. Moderate Traumatic Arthritis right knee

(R. 264). Dr. Sandifer advised Ferguson could not engage in repetitive overhead lifting with the right upper extremity; below the shoulder lifting should be restricted to no more than ten pounds occasionally; and she would have trouble with repetitive pushing and pulling due to tendonitis as well as difficulty operating a keyboard. Dr. Sandifer restricted Ferguson's sitting to four to five hours in an eight hour day and standing to two hours in an eight hour day and no more than fifteen to twenty minutes at a time. He further advised she could not operate foot controls repetitively with the right lower extremity and could not engage in repetitive stooping, crawling or climbing activities (R. 264-271).

  After consideration of all of the evidence, the ALJ issued her decision and found Ferguson met the insured status requirement though December 31, 2010 and she had not engaged in substantial gainful activity since December 31, 2006 (R. 13). Her severe impairments included lateral epicondylitis of the right elbow, arthritis of the right knee and ankle and right shoulder tendonitis with mild impingement; however, none of the impairments, either alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 13).

  The ALJ found Ferguson to have the Residual Functional Capacity ("RFC") to perform sedentary work except that she was

further limited in that she could only push and/or pull occasionally with the right upper extremity, occasionally balance, stoop, kneel, crouch and crawl and could never climb ladders, ropes or scaffolds (R. 13-14). While, the ALJ acknowledged Ferguson could not perform her past relevant work, she could perform the work of a cashier and such jobs existed in significant numbers in the national economy (R. 14-15). Accordingly, the ALJ concluded Ferguson was not under a disability from December 31, 2006 through the decision date, December 23, 2008.

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion. It must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

6

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. However, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340, 343-344 (5th Cir. 1988); citing, Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983). Also, Dellolio, 705 F.2d at 125.

### Issues

Ferguson raises the following issues for appellate review:

1. The ALJ erred in finding Ferguson does not have an impairment of combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

2. The ALJ erred in finding she had the Residual Functional Capacity to perform sedentary work.

3. The ALJ erred in finding that based on her age, education and work experience and Residual Functional Capacity that there were

7

jobs in that exist in significant numbers in the national economy that she can perform.

4. The ALJ erred in determining that she has not been under a disability as defined in the Social Security Act from December 31, 2006 through the date of the decision.

## Listed Impairments

Ferguson contends her severe impairments, lateral epicondylitis of the right elbow, arthritis of the right knee and ankle and right shoulder tendonitis with mild impingement, meet or medically equal a listed impairment. Yet, she does not cite a single listing which she contends applies.

The ALJ stated in her decision that she considered Ferguson's impairments under Listing 1.00 et seq. The undersigned has done so as well and determined that Listing 1.02 and 1.06 are the most applicable to Ferguson's condition.

> Listing 1.02 provides that major dysfunction of a joint is:
>
> Characterized by gross anatomical deformity... and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, body destruction or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight bearing joint, resulting in the ability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity..., resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2B.

As previously mentioned, there are very few medical records in this case. However, the records show that Ferguson does not have a problem ambulating effectively. The only record from Huey P. Long, indicates that when Ferguson was seen on January 29, 2007, she had no trouble ambulating (R. 139). Further, Dr. Sandifer noted that she did not walk with a cane or crutch when he saw her in August of 2008 (R. 263). Likewise, there is no evidence of involvement of a major peripheral joint in each upper extremity as Ferguson denied any significant problems with either the left upper or left lower extremity (R. 263).[1] Accordingly, Ferguson does not meet Listing 1.02.

In order to meet or medically equal Listing 1.06, one must have a:

> fracture of the femur, tibia, pelvis or one or more of the tarsal bones. With:
>
> A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid;
>
> and
>
> B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

As the record is devoid of any evidence as to the lack of a solid union of the femur (or any other bone) and because Ferguson is able to effectively ambulate, she does not meet Listing 1.06.

---

[1] Additionally, there are no imaging records found in the medical records provided.

Accordingly, Ferguson's argument that her severe impairments meet or medically equal a listing is without merit.

Residual Functional Capacity

Ferguson states (without argument) that the limitations placed on her by Dr. Sandifer prevent her from performing sedentary work. These limitations include no repetitive overhead lifting with the right upper extremity and below the shoulder lifting is limited to less than ten pounds on occasion. Also noted is Dr. Sandifer's opinion that Ferguson would have difficulty operating a keyboard repetitively with her right upper extremity and could sit for up to four to five hours in an eight hour day (R. 264-265, 267).

Social Security Ruling 96-9p defines the amount of time one must be able to sit to perform sedentary work. Specifically, it provides:

> In order to perform a full range of sedentary work, an individual **must** be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. If an individual is unable to sit for a total of 6 hours in an 8-hour workday, the unskilled sedentary occupational base will be eroded. The extent of the limitation should be considered in determining whether the individual has the ability to make an adjustment to other work.

Id. at 6. (Emphasis added). Substantial evidence does not support the ALJ's finding as to Ferguson's RFC as it is inconsistent with the only evidence in the record regarding Ferguson's sitting restrictions.

Jobs which Ferguson can perform

10

The ALJ found, based on the VE's testimony, that Ferguson can perform the work of a cashier. The VE's statement that Ferguson could perform this work was made prior to her examination by Dr. Sandifer. In his report, he states Ferguson would have trouble doing repetitive operation of a keyboard and could sit only four to five hours a day. In light of these restrictions, it is unlikely Ferguson is indeed able to perform the work of a cashier. Accordingly, substantial evidence does not support the finding that work exists which Ferguson can perform.

<u>Finding of not disabled</u>

As stated above, substantial evidence does not support the ALJ's determination as to Ferguson's RFC nor her ability to perform the work of a cashier. However, the undersigned is not able to render a determination that Ferguson is disabled as she does not meet a Listing and because there is not enough evidence in the record to make a determination regarding her RFC and what jobs, if any, she can perform.

<u>Conclusion</u>

Accordingly, IT IS RECOMMENDED that the finding that Ferguson is not disabled be REVERSED and the matter be REMANDED for further proceedings consistent with the views expressed herein.

Under the provision of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN (14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 20th day of September 2010.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE